## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAN-JAMES BUCHANAN,

      Petitioner,                    Case No. 5:07-CV-11630

v.                                 HONORABLE JOHN CORBETT O'MEARA
                                     UNITED STATES DISTRICT JUDGE

SHIRLEE HARRY,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

      Jan-James Buchanan, ("Petitioner"), presently confined at the Pugsley Correctional Facility in Kingsley, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his original and amended petitions, filed *pro se* and through his attorney Sanford A. Schulman, petitioner challenges his conviction for third-degree criminal sexual conduct, M.C.L.A. 750.520d(1)(b); aggravated stalking, M.C.L.A. 750.411i(2); and domestic violence, third offense, M.C.L.A. 750.81(4). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

      Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

On the evening of April 29, 2004, defendant sexually assaulted his wife, Candace Buchanan (Ms. Buchanan).   Ms. Buchanan testified that the following occurred.   Defendant went to bed earlier that evening.   Ms. Buchanan thereafter joined defendant in bed.   Within five minutes of her having arrived therein, defendant threw her on her stomach, placed his hands on her vagina, and then forcefully drove his fingers in and out of her vagina. Ms. Buchanan asked defendant to stop.   Defendant did not do so and instead began pulling Ms. Buchanan's hair and smacking her on her rear end.   In response to Ms. Buchanan's screaming, defendant closed the bedroom window.   Ms. Buchanan began getting sick to her stomach, eventually making it to the bathroom to vomit.

The following day, defendant went to work and Ms. Buchanan got her child to school.   She did not immediately contact the police.   Upon defendant's return, he told Ms. Buchanan: "you can sleep alone tonight."   Fearing that defendant would again act as he had, Ms. Buchanan thereafter contacted the police, filed a report, and had pictures taken of her buttock injuries.   While she was at the police department, defendant arrived, indicating that he desired to file a police report against Ms. Buchanan for physical and verbal abuse. Officer Marc Williams interviewed both defendant and Ms. Buchanan.   Based on these interviews, his observations of Ms. Buchanan's injuries and defendant's lack thereof, he arrested defendant.

On May 3, 2004, Ms. Buchanan obtained a personal protection order against defendant, prohibiting him from contacting her.   She testified that from jail, defendant thereafter contacted Ms. Buchanan by telephone.   On June 2, she filed a police report detailing the incidents.   Ms. Buchanan indicated that the subsequent contacts caused her to feel "scared" and "petrified," for both herself and her children.

Prior to trial, evidentiary motions were made by the prosecutor and defendant, respectively seeking admission of defendant's history of domestic violence and admission of Ms. Buchanan's past sexual conduct. Defendant argued that such evidence was probative of an alleged sexual encounter, occurring two nights prior to the instant assault, from which resulted the injuries on Ms. Buchanan's buttocks.   In ruling on defendant's motion, the circuit court determined that the proffered evidence was not admissible, in view of its highly prejudicial nature and its nonexistent probative value."   The circuit court however, granted the prosecutor's motion to admit other acts evidence of domestic violence by defendant.

2

> During trial, evidence was produced indicating defendant's history of domestic violence via the testimony of Ms. Buchanan, Officer Janeen Gielniak, and defendant's former spouse Wendy Buchanan. Defendant claims the trial court erroneously admitted this evidence of his history of domestic violence, improperly excluded evidence of the plaintiff's past sexual predictions, convicted him of stalking on the basis of insufficient evidence, and improperly calculated his sentence with respect to the statutory sentencing guidelines.

*People v. Buchanan,* No. 258575, * 1-2 (Mich.Ct.App. April 27, 2006).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 912, 722 N.W.2d 812 (2006).

Petitioner then filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could return to the state courts and exhaust additional claims. *Buchanan v. Bell*, No. 5:07-CV-11630; 2010 WL 2560434 (E.D.Mich. June 16, 2010).

Petitioner filed a post-conviction motion for relief from judgment, which was denied by the trial court. *People v. Buchanan*, Nos. 04-196178-FH; 04-196899-FH (Oakland County Circuit Court, October 11, 2011). The Michigan appellate courts denied petitioner leave to appeal. *People v. Buchanan*, No. 309069 (Mich.Ct.App. November 26, 2012); *lv. den.* 494 Mich. 881, 834 N.W.2d 475 (2013).

On September 10, 2013, this Court granted petitioner's motion to reopen the habeas petition and permitted him to file an amended habeas petition adding additional claims. In his original and amended habeas petitions, petitioner seeks habeas relief on the following grounds:

> I. Did the trial judge's exclusion of evidence related to the Buchanans' sexual history violate Mr. Buchanan's constitutional right to a meaningful opportunity to present a complete defense and cross examination of Candace Buchanan?

3

II. Was the trial judge's reliance on the rape-shield statute as a basis for stripping Mr. Buchanan of his constitutional right to a meaningful opportunity to present a complete defense misplaced?

III. Was Mr. Buchanan denied any possibility of a fair trial by the erroneous admission of extensive testimony regarding a highly inflammatory matter under MRE 404(b) when there was no logical rationale for admission of this evidence and the prejudice overwhelmingly outweighed the probative value?

IV. Did the trial court violate Appellant's due process rights at sentencing by mis-scoring OV 10 and OV 7 with regard to the conviction for CSC-3?

V. Did the prosecutor fail to present sufficient evidence to sustain a conviction for aggravated stalking and were Mr. Buchanan's state and federal constitutional rights to be free of conviction in the absence of proof beyond a reasonable doubt violated?

VI. Petitioner is entitled to a resentencing because of ineffective assistance of trial counsel as well as appellate counsel.

VII. Petitioner is entitled to an evidentiary hearing pursuant to 28 USC § 2254(e)(2).

VIII. [1] The trial court violated petitioner's due process rights at sentencing by mis-scoring PRV 6 because the conviction was not a prior conviction because the cases were consolidated.

IX. The trial court violated petitioner's due process rights at sentencing by mis-scoring PRV 7 because the domestic violence third offense cannot be used as the basis for assessing 20 points for PRV 7.

X. The trial court violated petitioner's due process rights at sentencing by mis-scoring OV 13 because the domestic violence third offense cannot be used as the basis for assessing 25 points for OV 13.

XI. Petitioner is entitled to a resentencing because of ineffective assistance of trial counsel as well as appeal counsel for failure to raise and object to the

---

[1]  For judicial clarity, this Court has renumbered petitioner's first through sixth supplemental claims as claims number eight through thirteen.

4

errors in scoring of the prior record and offense variables.

XII. The petitioner was materially prejudiced by the failure of defense counsel and the prosecutor to introduce evidence that the complaining witness had a valid bench warrant for her previous failure to appear that would have discredited the witness.

XIII. The medical evidence presented at trial failed to support the conviction because there was no evidence of bruising except from the complainant's own description and not supported by any competent medical evidence.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A

5

federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA.

6

*See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be."
*Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the
AEDPA, does not completely bar federal courts from relitigating claims that have
previously been rejected in the state courts, it preserves the authority for a federal court
to grant habeas relief only "in cases where there is no possibility fairminded jurists could
disagree that the state court's decision conflicts with" the Supreme Court's precedents.
*Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against
extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary
error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5
(1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a
state court] is inconsistent with the presumption that state courts know and follow the
law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal
court, a state prisoner is required to show that the state court's rejection of his claim
"was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement."
*Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court
must remember that under the federal constitution, petitioner was "entitled to a fair trial
but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  Discussion

**A.  Claims # 1 and # 2.  The claims involving the exclusion of the victim's**

7

**prior sexual history under Michigan's rape-shield statute.**

In his first and second claims, petitioner contends that his right to present a defense and his right to confrontation was violated by the trial judge's decision to deny petitioner's request to cross-examine the victim about her history of consensual "rough sex" with petitioner.  Petitioner contended that this line of questioning was essential to his defense, but the judge ruled that it was inadmissible under the provisions of Michigan's rape-shield law.

The Michigan Court of Appeals rejected petitioner's claim:

Michigan's rape shield statute provides in relevant part that

[e]vidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted ... unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor. [MCL 750.520j(1).]

The rape shield law operates as a general evidentiary exclusionary rule, establishing that evidence of an alleged assault victim's past sexual practices is largely irrelevant to whether a charged assault occurred. *People v. Morse*, 231 Mich.App 424, 432; 586 NW2d 555 (1998). "[W]hen the proposed evidence relates to the [victim's] consensual sexual relations with the defendant, the public policy interests in excluding prejudicial, inflammatory, or misleading bad act character evidence are no longer the primary focus of the statute.  Instead, the focus shifts to materiality and balancing probative value against prejudice." *Adair*, supra at 481-482. This balancing requires case-by-case evaluation, depending on the facts of the case. *Id*. at 483, 485.

Given this type of evaluation, defendant has failed to establish that the circuit court abused its discretion.  Defendant and the victim are husband and wife.

8

He maintains that the victim's injuries were the result of consensual sexual activity occurring two nights prior to the alleged sexual abuse. In order to establish this, he sought to present evidence, and cross-examine the victim concerning, the couple's history of sexual behavior-namely their propensity to engage in "rough" consensual sex. However, evidence regarding, and cross-examination of the victim concerning, her alleged sexual predilections would not demonstrate that she consented to the assault. *People v. McLaughlin*, 258 Mich.App 635, 655; 672 NW2d 860 (2003)(noting that the "salacious detail" of the parties' prior sexual relations had "only the most tenuous connection to the question of the victim's consent ... but great potential for embarrassment, harassment, and unnecessary intrusion into privacy"). The circuit court was thus justified in concluding that the proffered evidence was of scant probative value.

Conversely, defendant was not prejudiced by the exclusion. He was permitted to present a main defense-that the injuries to the complainant were indeed the result of consensual sexual activity two evenings prior-thereby indicating that the alleged assault did not occur. Defendant testified to this effect; his testimony was corroborated by prior consistent statements made to the police; and a statement he authored for the police, specifically detailing his version of the events, the source of the complainant's injuries, and the parties' prior sexual relations, was admitted into evidence. In fact, and despite the court's evidentiary ruling, defendant was permitted to cross-examine the complainant as to the parties' sexual conduct two nights prior, which she denied, and as to her general desire for rough sexual conduct, which she further denied.

Defendant argues that his constitutional right to confrontation, embodied in his right to cross-examine prosecution witnesses, was prejudiced by the court's preclusion of questions concerning the parties' past sexual conduct. However, "'[t]he right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant issues. It may bow to accommodate other legitimate interests in the criminal trial process and other social interests.'" *People v. Hackett,* 421 Mich. 338, 344; 365 NW2d 120 (1984), quoting *People v. Arenda*, 416 Mich. 1, 8; 330 NW2d 814 (1982). As evidence of the parties' past sexual relations was of scant probative value, defendant had no right to cross-examine the complainant concerning the same; it was irrelevant.

Defendant has therefore failed to establish that the circuit court abused its discretion with respect to its limitations on the admission of evidence

9

concerning, on cross-examination of the complainant regarding, alleged aspects of her general sexual history.

*Buchanan,* No. 258575, at * 2-3.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United*

States v. Scheffer, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Supreme Court has noted that the legitimate state interests behind a rape-shield statute include giving a rape victim a heightened protection against surprise, harassment, and unnecessary invasions of privacy and may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991). The rape-shield laws were designed to protect the victims of sexual assault and to encourage the reporting of what has traditionally been an unreported crime. *See Carrigan v. Arvonio*, 871 F. Supp. 222, 224 (D.N.J. 1994).

In *Gagne v. Booker,* 680 F.3d 493, 514-17 (6th Cir. 2012)(en banc), the Sixth Circuit ruled that the Michigan Court of Appeals' decision to affirm the exclusion of evidence of a sexual assault victim's past willingness to engage in consensual group sex was not an objectively unreasonable application of Supreme Court precedent, and thus

11

did not entitle the petitioner to federal habeas relief.  Although acknowledging that this evidence would have been the petitioner's most relevant evidence to the charge of first-degree criminal sexual conduct, the Sixth Circuit concluded that the state court had legitimate reasons for concluding that such evidence was not sufficiently probative, in light of the "general antipathy" for propensity evidence, Michigan's established interest in its rape-shield laws, and the Michigan Supreme Court's repeated rejection of similar arguments in other cases. *Id.* at 517-18.

The Michigan Court of Appeals' rejection of petitioner's claim was reasonable, thus, precluding habeas relief.  As in *Gagne,* the Michigan Court of Appeals in petitioner's case properly weighed the State of Michigan's interest in not having this evidence admitted against petitioner's interest in having the evidence admitted.  The Michigan Court of Appeals reasonably concluded that evidence that the victim had previously engaged in consensual "rough sex" with petitioner would not have been probative as to the issue of whether the victim consented to be assaulted on the night in question.  Finally, the Michigan Court of Appeals noted that in spite of the judge's ruling, petitioner was able to present evidence through his testimony and the testimony of the police that injuries to the victim were caused by consensual sexual activity between petitioner and the victim two evenings prior to the assault, as part of petitioner's defense that the alleged assault did not occur.  In particular, because petitioner was permitted to present testimony that he and the victim had engaged in consensual "rough sex" two nights prior to the alleged assault, the judge's ruling prohibiting petitioner from

12

questioning the victim about her propensity for "rough sex" did not deprive petitioner of a fair trial. *See Gagne,* 680 F. 3d at 516.  In light of " the general antipathy for propensity evidence" and Michigan's "established interest" in its rape-shield laws, the Michigan Court of Appeals' rejection of petitioner's first and second claims was not "beyond any possibility for fairminded disagreement." *Id.* at 518.  Petitioner is not entitled to relief on his first two claims.

**B.  Claim # 3.  The prior bad acts evidence claim.**

Petitioner next claims that the trial court erroneously admitted evidence of his history of domestic violence with his current and former spouses.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 908-09 (E.D. Mich. 2006).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007).  The admission of this "bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly

13

established Supreme Court law which holds that a state violates a habeas petitioner's due

process rights by admitting propensity evidence in the form of "prior bad acts" evidence.

*Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d

704, 716 (E.D. Mich. 2003).  Petitioner is not entitled to habeas relief on his third claim.

### C.  Claims # 4, 8, 9, and 10.  The sentencing guidelines claims.

In his fourth, eighth, ninth, and tenth claims, petitioner alleges that several offense

and prior record variables were mis-scored under Michigan's sentencing guidelines.

Petitioner's claim that the state trial court incorrectly scored or calculated his

sentencing guidelines range under the Michigan Sentencing Guidelines is not a

cognizable claim for federal habeas review, because it is basically a state law claim. *See*

*Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed.

Appx. 52, 53 (6th Cir. 2003).  Petitioner had "no state-created interest in having the

Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See*

*Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short,

petitioner had no federal constitutional right to be sentenced within Michigan's guideline

minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D.

Mich. 2004).  Any error by the trial court in calculating his guideline score would not

merit habeas relief. *Id.*  Petitioner's claim that the state trial court improperly departed

above the correct sentencing guidelines range would thus not entitle him to habeas relief,

because such a departure does not violate any of the petitioner's federal due process

rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).  Petitioner is not entitled to

14

habeas relief on his fourth, eighth, ninth, or tenth claims.

### D.  Claims # 5 and # 13. The sufficiency of evidence claims.

The Court will consolidate petitioner's two sufficiency of evidence claims together for judicial clarity.  In his fifth claim, petitioner argues that there was insufficient evidence to support his conviction for aggravated stalking.  As part of his thirteenth claim, petitioner claims that there was no medical evidence to support petitioner's criminal sexual conduct conviction.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees

15

with the state court's resolution of that claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of the

*Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational

people can sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be mistaken, but that

they must nonetheless uphold." *Id.*  Therefore, for a federal habeas court reviewing the

sufficiency of evidence for a state court conviction, "the only question under *Jackson* is

whether that finding was so insupportable as to fall below the threshold of bare

rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or

redetermine the credibility of the witnesses whose demeanor was observed at trial.

*Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to

weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v.

Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the

fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319

F.3d 780, 788 (6th Cir.2003).

The Michigan Court of Appeals rejected petitioner's fifth claim:

> Defendant argues that the evidence was insufficient to establish that the
> complainant actually felt "terrorized, frightened, intimidated, threatened,
> harassed, or molested," as she indicated during cross-examination that
> defendant's repeated phone calls merely bothered her.  But, in emphasizing
> an isolated remark, defendant fails to acknowledge that the complainant
> repeatedly testified that she felt terrorized and petrified in light of defendant's
> repeated phone calls.  At worst, this is a situation involving inconsistent

testimony, although the complainant's statement emphasized by defendant could well be viewed as merely a nonresponsive answer expressing frustration with defense counsel's question. In any event, witness credibility determinations, in light of inconsistent testimony, go to the weight, not the sufficiency, of the evidence. *People v. Naugle*, 152 Mich.App 227, 235-236; 393 NW2d 592 (1986). Such determinations are in the province of the jury, an area in which appellate courts may not interfere. *People v. Wolfe*, 440 Mich. 508, 514-515; 489 NW2d 748 (1992). As substantial evidence was produced indicating that defendant had a history of domestic violence against the complainant, suggesting the candor of the victim's testimony that she feared defendant, a rational jury could have concluded that the victim was, in fact, terrorized, frightened, intimidated, or threatened. *Gonzalez*, *supra* at 640-641. Defendant's argument is therefore without merit.

*Buchanan,* No. 258575, at * 5.

Under Michigan's stalking statute, stalking is defined as:

"Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

M.C.L.A. 750.411i(1)(e).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that the victim felt "terrorized, frightened, intimidated, threatened, harassed, or molested" by petitioner's repeated telephone calls, so as to support his conviction for aggravated stalking. The victim testified that she had taken out a personal protection order against petitioner after his arrest on the criminal sexual conduct charge, but petitioner began calling her from the jail. The victim testified that the first phone call scared her. The victim testified that petitioner continued calling from the jail but she would either hang the phone up or not answer it. The victim testified that she was

17

petrified of petitioner and afraid of him "beating her to a pulp." The victim made a police report concerning the telephone calls. (Tr. 9/9/04, pp. 95-101). When viewed in a light most favorable to the prosecution, the evidence established that the victim felt "terrorized, frightened, intimidated, threatened, harassed, or molested" by petitioner's calls. Petitioner is not entitled to habeas relief on his fifth claim.

In his thirteenth claim, petitioner contends that there was insufficient medical evidence to support the victim's claim that she had been sexually assaulted.

The testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction, so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *Brown v. Davis,* 752 F. 2d 1142, 1144-1145 (6th Cir. 1985). The testimony of a sexual assault victim alone is sufficient to support a criminal defendant's sexual assault conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6th Cir. 2000)(citing *Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)). The victim's testimony that petitioner sexually penetrated her against her will was sufficient to sustain petitioner's third-degree criminal sexual conduct conviction, notwithstanding the lack of physical evidence to corroborate the victim's testimony. *See O'Hara v. Brigano,* 499 F. 3d 492, 500 (6th Cir. 2007). Petitioner is not entitled to habeas relief on his sufficiency of evidence claims.

### E.  Claims # 6, 11, 12, and 13.  The ineffective assistance of counsel claims.

The Court will consolidate petitioner's ineffective assistance of counsel claims

together for judicial clarity.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v.*

19

*Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In his sixth and eleventh claims, petitioner contends that his trial counsel was ineffective for failing to object to the scoring of several of the offense and prior record variables of the Michigan Sentencing Guidelines. Petitioner also claims that appellate counsel was ineffective for failing to challenge the scoring of some of these guidelines

variables on petitioner's direct appeal.

A right to the effective assistance of counsel exists during sentencing in both noncapital and capital cases. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012). Although sentencing does not involve a criminal defendant's guilt or innocence, "ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler,* 132 S. Ct. at 1386 (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)).

On petitioner's direct appeal, the Michigan Court of Appeals ruled that Offense Variables (OV) 7 and 10 of the Michigan Sentencing Guidelines were correctly scored. *People v. Buchanan,* No. 258575, at * 5-7.  The Michigan Supreme Court subsequently denied petitioner leave to appeal.  On post-conviction review, the trial judge ruled that Prior Record Variables (PRV) 6 and 7 and OV 13 were correctly scored. *People v. Buchanan,* Nos. 04-196178-FH, 04-196899-FH, at * 9.  The Michigan appellate courts subsequently upheld this ruling.

In this case, the trial judge concluded that there was a factual basis for the scoring of the various offense and prior records variables under Michigan's Sentencing Guidelines and the Michigan appellate courts upheld these rulings both on direct and post-conviction review.  Petitioner is therefore unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. *See Coleman v. Curtin*, 425 Fed. Appx. 483, 485 (6th Cir. 2011).

21

If "one is left with pure speculation on whether the outcome of ... the penalty phase could have been any different," there has been an insufficient showing of prejudice. *Baze v. Parker*, 371 F. 3d 310, 322 (6th Cir. 2004). Because petitioner has offered no evidence to show that the state trial court judge would have been inclined to impose a lesser sentence, petitioner is unable to show that he was prejudiced by his trial counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines or appellate counsel's failure to challenge the scoring of some of these guidelines variables on direct appeal. See *Spencer v. Booker*, 254 Fed. Appx. 520, 525-26 (6th Cir. 2007).

In his sixth and twelfth claims, petitioner alleges that his trial counsel was ineffective for failing to present evidence that he claims would have challenged the credibility of the victim and his ex-wife.

Petitioner initially contends that his trial counsel was ineffective for failing to introduce evidence of the victim's sex toys to support his defense that the victim's injuries were the result of consensual "rough sex" two nights prior to the alleged assault.

The trial judge rejected petitioner's claim on post-conviction review on two grounds. The judge first noted that other than his own statements, petitioner had failed to present any evidence that such sex toys existed. *People v. Buchanan,* Nos. 04-196178-FH, 04-196899-FH, at * 8. The judge secondly noted that the Michigan Court of Appeals on direct review had upheld the judge's exclusion of evidence of the victim's "past sexual predilections." *Id.*

22

Petitioner is not entitled to relief on this claim for two reasons.  First, petitioner has presented no evidence to either the state courts or to this Court that any such evidence of these "sex toys" existed.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Secondly, the judge had ruled that petitioner was precluded under Michigan's rape-shield statute from questioning the victim about her past sexual activities.  Because evidence involving the victim's alleged sex toys would have been ruled inadmissible by the judge under Michigan's rape shield statute, counsel was not ineffective in failing to seek its admission. *See Capps v. Collins*, 900 F. 2d 58, 61 (5th Cir. 1990).

Petitioner further claims that trial counsel was ineffective for failing to introduce evidence that the victim and petitioner's ex-wife had been issued bench warrants in the past for failing to appear in court.

In the present case, trial counsel extensively cross-examined the victim.  The victim admitted that she and petitioner had been married and divorced and re-married, even after some of the prior assaults that the victim testified to.  The victim admitted that she did not initially report the sexual assault to the police but waited until the next day. The victim, in fact, admitted that she was not initially going to report the incident to the police at all.  The victim admitted that she never went to a doctor to have an examination after the assault, nor did she ever show any injuries to her vagina to the police.  Although the victim claimed that she screamed during the assault, she admitted that neither of her

23

children woke up. (Tr. 9/09/04, pp. 111-27; Tr. 9/10/04, pp. 135-72).  Although trial

counsel did not question petitioner's ex-wife about a bench warrant being issued for her

arrest for failing to appear in court, counsel did elicit testimony from petitioner's ex-wife

that criminal sexual conduct charges that she had filed against petitioner in 1989 were

dismissed because she failed to appear for his trial. (Tr. 9/10/04, pp. 222-23).

Petitioner's ex-wife also admitted that she did not like him. (*Id.* at p. 214).

Petitioner was not prejudiced by counsel's failure to impeach the victim and

petitioner's ex-wife with these bench warrants because this evidence was cumulative of

other evidence presented at trial in support of petitioner's claim that the victim and

petitioner's ex-wife had testified falsely concerning the nature of the various assaults that

they had testified about. *Wong,* 558 U.S. at 22-23; *See also United States v. Pierce,* 62 F.

3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich.

2001).  In this case, the jury had significant evidence presented to it to challenge the

victim's and the ex-wife's credibility.  Because the jury was "well acquainted" with

evidence that would have supported petitioner's claim that the victim and the ex-wife

fabricated these charges, additional evidence in support of petitioner's defense "would

have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23.

Lastly, as part of petitioner's thirteenth claim, petitioner contends that trial

counsel was ineffective for failing to argue that the lack of medical evidence in this case

was consistent with petitioner's defense theory.

While the right to effective assistance of counsel extends to closing arguments,

24

counsel nonetheless has wide latitude in deciding how best to represent a criminal

defendant, and deference to a defense counsel's decisions in his closing argument is

particularly important because of the broad range of legitimate defense strategies at that

stage. *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003).  Judicial review of a defense

attorney's summation must therefore be highly deferential and is "doubly deferential

when it is conducted through the lense of federal habeas." *Id.*

 As part of defense counsel's closing argument, counsel noted that the police had

advised the victim to get medical treatment but she failed to do so.  Counsel suggested

that the victim did not see a doctor for a medical examination because "the doctors

weren't going to find anything because nothing happened to that lady on that particular

evening sexually." (Tr. 9/13/04, p. 408).  Because counsel did, in fact, argue about the

lack of medical evidence to corroborate the victim's testimony, this claim is without

merit.

 Finally, to the extent that petitioner argues that appellate counsel was ineffective

for failing to raise some of his claims on his appeal of right, he would not be entitled to

habeas relief.  The Sixth Amendment guarantees a defendant the right to the effective

assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397

(1985).  However, court appointed counsel does not have a constitutional duty to raise

every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751

(1983).  This Court has already determined that all of petitioner's claims are without

merit.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an

issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal.

### F.  Claim # 7.  The evidentiary hearing claim.

In his seventh claim, petitioner requests an evidentiary hearing on his claims.

The Court denies petitioner's request for an evidentiary hearing.  A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001).  In light of the fact that petitioner's claims are devoid of merit, he is not entitled to an evidentiary hearing.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at

484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**


s/John Corbett O'Meara
United States District Judge

Date:  May 15, 2014


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 15, 2014, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager